Morning, everyone. We will be hearing three cases today, and we will start with Central States Southeast and Southwest Areas Pension Fund v. Laguna Dairy No. 23-3206, and we'll start with you, Mr. Hernick. Thank you, Your Honor. May it please the Court, Andrew Hernick, on behalf of Appellants, I'll be reserving three minutes for rebuttal.  Your Honors, today we ask this Court to reverse the dismissal of the complaint and to remand the action back to the District Court for two overarching reasons. First, the Fund had the right to revise the Withdrawal Liability Assessment, and second, the Fund gave proper notice of the revised assessment under the statute. Can I ask a preliminary question? It seems unclear to me from the record in the briefs that the settlement agreement seems to contemplate minding the commonly controlled entities. Is that correct? Can you repeat it? Sorry. I'm sorry. The settlement agreement seems to contemplate minding the commonly controlled entities. Is that correct? Yes. With the clarification that they are not really having obligations under the agreement, but they're having more akin to a third-party beneficiary in that they're having the revised Withdrawal Liability Assessment applied. That leads to what my problem is. The parties briefed the case as if the commonly controlled entities were not bound by the settlement agreement, and the settlement agreement itself doesn't list the commonly controlled entities. Correct. So what are we to make of that? Well, I think there's a big distinction between whether the parties are bound by the agreement. This is not a case of breach of contract. That's not what our cause of action is. What happened is we revised the assessment for the entire employer, the entire MEPA employer, which is the entire controlled group. And under this Court's holding in Barker and Williamson, notice to one is notice to all. So therefore, when the control group members that entered the agreement received the revised assessment, which had the revised assessment in it, our argument is that, and it's correct, that that was notice to those two members and therefore notice to the entire control group at the time, which included the appellees here. All right. Which leads to a second dumb question then. Would this dispute have been avoidable if the settlement agreement had been entered as an award before an arbitrator? In other words, we wouldn't have to be here today if that happened, right? I would say it could have been avoided by that. But the reason we don't do it that way is it's overly costly. You know, the, well, first of all, that assumes the arbitrator, let me back up. It possibly could have been avoided by that because we were assuming the arbitrator would have entered the award, you know, just as a matter of course. But the statute provides that the arbitrators enter an award based on the employer's challenges. Well, except we've got, these are multi-employer pension plan funds. The arbitrator or the court provides some oversight. If you're saying that you can just strike the settlement on its own, there's a danger that the settlement leaves the other employers too much on the hook. Shouldn't we have oversight by an arbitrator or a court to enter some kind of award? That's the procedure 1401 envisions, that there will be some kind of agreement or ratification that's not, you know, improperly lenient on the employer. I would say to that the statute in the mandatory arbitration requirement is designed to benefit funds, to make collection of withdrawal liability more efficient to them, to limit their costs. And to interpret those provisions, the mandatory arbitration provisions, as saying that a party, or sorry, that, yeah, the fund and an employer must go to an arbitrator, spend their time and resources having them enter it, and then immediately go to a district court, file an unnecessary district court action to have the district court enforce it. That's a whole lot of strain on judicial and arbitral resources, and it's also a strain on funds limited resources. That mandatory nature, that's the way the statute itself is written. And I'd like to understand, this is in some ways preliminary, but in some ways gets to the heart of what we're doing today, and that is, is this the right forum for us to address in the first instance, the authority to revise by way of settlement agreement? Whether the settlement agreement constitutes a revision under the statute, and which notice provisions govern, why, under 1401A1, any dispute between an employer and the plan sponsor concerning a determination made under sections 1381 through 1399 shall be resolved through arbitration. We have our decision at Huber that seems to envision questions about the authority of a plan to make revisions going to an arbitrator in the first instance. And we also have the opinion of the PDGC 90-2, that's at least was cited in the district court, that also seems to envision that determination being made by an arbitrator before it ever gets to federal court. So what are we doing without having gone through that process? So your question is, just to get it clear, is whether this current dispute should have gone to arbitration. The question of the authority to make a supposed revision of the assessment in the form of a settlement agreement. Why isn't that question about the authority to do that something that has to go to arbitration first? Well, let's assume that the employer could have challenged that. They didn't. They didn't go after we signed the settlement agreement and say, you know, we're going to request review of this. We don't think it's proper. They didn't. They didn't then file arbitration. They've waived. They also have the ability. Either party can file under 1401. Yes, but the court discussed this in the DISA Industries case in the Seventh Circuit. That is not meant to be. Why should we follow DISA Industries? DISA Industries took a highly purposive approach, and it did not involve a settlement like this one that was struck entirely outside the litigation process that was not being reviewed. I would say this case is a stronger case for the revision of the DISA Industries. In DISA Industries, the fund revised by itself, and then the employer waived its right to arbitrate the revised assessment. Here, there's absolutely no reason to hold that the fund should not be allowed to revise. This is actually agreed to by the employer. You're saying there's no reason not to, but what in the statute says you can? Judge Krauss pointed out that the statute envisions first go through arbitration, then come to court, at least if arbitration is invoked. Here, arbitration is invoked. Why don't we just let that process play out the way it's supposed to? 1401B is the exhaustion system. Yes. I think the answer, and the answer is that the parties, the whole point of the arbitration process is to reserve the fund's resources. Well, you could say that of any exhaustion provision, which is it'd be cheaper not to exhaust. That's basically your answer. But the law is full of exhaustion provisions that says an agency gets the first crack at it, or an arbitrator gets the first crack at it. So I don't think just saying it's cheaper and it's faster is enough of an answer to that. Well, I, you know, to answer your question, I think that clearly under both the DISA case and the USX case, a fund can revise so long as there's no prejudice. But the, okay, the Fourth Circuit's case is quite consistent where they were in arbitration already, and then the Fourth Circuit, it was enough. The arbitration went ahead and proceeded. That's not like this case where you just avoided having an arbitral award at all. In the Fourth Circuit, they said, okay, the arbitrator should have taken into account this revision. That's different from this case where there just wasn't any arbitral award, right? Right. I agree the facts are different. I don't think they're meaningfully different. I think the upshot of both the DISA Industries case and the USX case is that there's absolutely no, I mean, let's put it this way. NETLA does not say a fund, you know, it does not say anything about whether a fund can revise an assessment. And so there's a question there is how do we interpret that silence? And that's what both DISA and the USX Industries case we're looking at. And they interpreted it as saying, well, we got to look to the reason for the statute, and it's to protect funds. And so there's no reason we're going to read that silence as something that's meant to say, you know, they can only revise under 1401B2 in response to requests for review. But this question, whether they can revise and under what circumstances, why isn't that question itself one given our decision at Huber and given the language of 1401A1 that itself needs to be considered by the arbitrator? I mean, this is akin to the question of arbitrability in the first instance being addressed by the arbitrator, right? I would say that the question of whether the fund can revise, that was never any dispute raised by the employer. The point of the arbitration, mandatory arbitration requirements, that any dispute the employer has is to be first raised in arbitration. And then in a motion to enforce, vacate, or modify in the district court. But what about now? What about for you now? I mean, you're coming forward in what is effectively a collection action, but at the same time, that's premised on the assessment in the form of the settlement being valid, right? And you're saying this is only if the employer has a dispute, but 1401A1 says any dispute between an employer and the plan sponsor. If the plan sponsor has a dispute or the employer has a dispute, it doesn't draw the distinction you're drawing. Yes, but I would turn back to the fact that here the employer didn't raise this dispute. Your argument at rest is the statute doesn't say we can or can't revise. We should read the silence as empowering the plan, but we normally don't read statutory silence as saying you can do anything that's not expressly forbidden. If it has, this is a path for exhaustion, we normally read it as follow the statutory path. Right, but, and I think in these industries, the court was, Seventh Circuit was clear on this. The exhaustion provision is there for employers to have to challenge, and it's not to be construed against the fund. And there's, that was the first part of that opinion before they got to the issue at heart here. And I see I'm running out of time, but. Let's talk about the validity of this revision. What is the authority that you rely on to make a revision to the assessment of liability that's based on the financial condition of the employer as opposed to the various formulae that are set forth in the statute itself? Well, let me begin with, by the way, I'm out of time. Is it okay if I answer? Please. Okay, let me begin with a caveat there. We did not settle this based on collectability. The collectability issue came about five years later with the bankruptcy. We settled this because the employer had raised certain challenges to how we calculated the annual payment. We had said, no, that's incorrect. We think the annual payment should be X. They said they thought it should be Y. And, you know, and I think we settled based on our respective litigation risk and reached a revised assessment and issued a revised assessment that was a number in between that both parties were comfortable with based on their litigation risk. And that's nothing unique. You know, this court in Renko noted that the whole point of or the very underlying point of the arbitration, the mandatory arbitration procedures, is that withdrawal liability calculations are complex and there will be a dispute oftentimes as to what the correct way to do it is. And the court noted the same induces industries, saying that even in the best of circumstances, the parties may generally disagree about the interpretation of the statute, which sets forth an intricate series of formulas that are not always straightforward to apply. So the idea that it's not based on the statutory formula here, first, is false because it's based on an agreed amount based on both parties' views of the statute. And second of all, you know, there's no substantive logical reason why, if in decent industries, a fund can or has authority to revise an assessment, you know, on its own. What's the reason for not allowing a fund to revise an assessment with the agreement of the employer and preserve its rights under federal law? There's no reason to disallow that. And indeed, it would go against the very idea of the mandatory arbitration provisions, which are to save the fund costs and resources. So to force the fund to then have an arbitrator enter it, if he or she is willing to enter it, and then go to a district court, waste the district court's time having the district court enter it, again, if they're willing to enter it, it doesn't exactly align with the statutory mandate given to the arbitrator. That is contrary to the very idea of the whole arbitration, mandatory arbitration procedures, which are to save the fund money, ultimately, because the fund's a nonprofit that is there to, you know, benefit its and pay benefits to its pensioneers. All of its money goes to that. So that was what motivated Congress to adopt the mandatory arbitration provision. It wasn't to help employers get out of paying withdrawal liability, to put a bunch of red flags up for the fund. It was put in place to make it more efficient for the fund to collect withdrawal liability. And reaching an agreement, you know, on the amount of withdrawal liability after arbitration is initiated, there is simply no reason, given the animating purpose of the statute, that that shouldn't be allowed. I'm going to ask the clerk to just add five minutes to time. Just, I began, go back to the beginning. I was trying to work from the back end. If you could get an arbitrator to enter an award based on the settlement, but let's work maybe from the front end. The settlement agreement has, says that there will not be an attempt to pursue arbitration. Is that correct?  So, the, is your position that the employers were under, under common control of board in Ohio entities are bound by the settlement agreement? Or, unlike the Ohio, board in Ohio entities, could they have pursued arbitration in response to the revised assessment because they were not included, or they would not sign these to the settlement agreement? I'll answer your question by saying it's immaterial. And let me explain that. The, under Barker and Williamson, I don't think there's any dispute that the revised assessment contained in the settlement agreement, that that was a notice in demand to all the control group members. Notice to one is notice to all. So, let's start there. Then, let's assume those control group members that didn't sign the agreement weren't bound by the agreement. They have no obligations under it. They're just third party beneficiaries receiving the revised assessment. Well, that means they would have had a right to challenge the revised assessment within 90 days of the issuance of the notice in demand. The statute provides they would have request, would have had a request review within that time. And they didn't do so. So, even if you assume they're not bound by it, they've forfeited their right to challenge the revised assessment. And I think that goes back. But then the argument would be that there was no arbitration proceeding under 1401B1? Yes. Okay, I get it. Is it your position that a collection action is not a dispute between an employer and the plan sponsor concerning a determination made under sections 1381 through 1399? I think this goes back to what I was just saying. The employer here, I mean, we know the board and entities waived the right to challenge the assessment, which I think shows that it was an assessment under MEPA, but I digress. The, I don't know what you mean by they waived it. They invoked arbitration at first. Now, maybe your position is there's some kind of estoppel that arises out of the settlement. But that would be a different position. I don't think you argued that in your brief. We did not. And I, let me be more fine-tuned here. Okay. Our position, and this is clearly the intent of the settlement agreement, our position is that a revised assessment was issued under the settlement agreement. As the Seventh Circuit stated in DISA Industries, and no circuit is held otherwise, a revised assessment is treated as a new assessment under MEPA and resets the clock. So because no one challenged that, that's why this is a default action. It's not a default action under the original assessment. It's a default action under the revised assessment. The thing that I worry about with that argument is that there's no logical stopping point to it, right? Then any time you want to revise things, you reset the clock. The statute has some limited periods. The point is an employer ought to be able to withdraw and know what it owes. But I don't see a stopping point for your argument. It seems like this could go on for years. And you just nodded at what I said. So we assume most fiduciaries are going to be good about this. But the statute is also written to constrain the ones who aren't. And the tight timelines in the statute suddenly don't bite at all under your reading. What limiting principle is there? I think there is a limiting principle, Your Honor. And I think it's prejudice of the employer. And I don't think this court to... And by the way, you could also say, as the U.S. Executive Court said, prejudice to the employer, bad faith by the fund. We're comfortable with those caveats here. And we think, to your point, they need to exist. But this isn't a case of any type of prejudice. Here we revised the assessment downward, lowering the obligation of ultimately the appellees here. And they did nothing. They sat and let Board in Ohio negotiate a settlement agreement for them. Didn't challenge the revised assessment under the settlement agreement. But then that goes back to my earlier point that maybe it benefits this employer at the expense of the other employers involved. And if there were an arbitrator's oversight or a court's oversight, that might check that. But this is unreviewed, basically. I don't think, under the statute, the assessment just went to these employers. It goes to notice the one... I'm sorry, the MEP employers, the entire control group. But I don't think it's correct to say that this revised assessment only inured to the benefit of Board in Ohio and Board in Derry, the two entities that signed the agreement. Because, again, notice to one is notice to all. And we're here not suing on the original assessment, not saying that appellees owe it. We're here suing on a default under the revised assessment. So we're treating them all equally. And we have to under the statute because 1301B1 defines the employer as all trades or businesses under common control, not just the entities that participated. I've got two questions for you before we let you sit down. One is that we've got here an overlay of bankruptcy. And as the district court pointed out, the central states filed its non-objection statement as to the reserve account. And then there's a settlement in the bankruptcy itself. And part of that settlement is that Laguna Derry is no longer obligated to indemnify burden. Does that have an effect here? Does that extinguish the joint and several liability that would otherwise go along with the control group? It does not, Your Honor. And in that very, you know, whether you call it a non-objection, we call it a reservation of rights. And if the court looks at that provision, we literally said in there, we are preserving the right to go after non-bankrupt entities that are jointly and severally liable for the withdrawal liability. And Laguna knew this the whole time. We had settlement negotiations with Laguna directly during the bankruptcy. They didn't say anything about the arguments they're making now. When those fell apart. What was the purpose for giving them the pause then? Sorry. What was the purpose for giving them the pause? What was the purpose then for accepting them, you say, in the bankruptcy? We can go after you later, but we're not going after you now. What was the bankruptcy order? Oh, the bankruptcy order was a settlement agreement that entered by the court that just extinguished Laguna's right. I mean, there are other provisions, but it extinguished Laguna's duty under their agreement with the debtors to indemnify for any losses. So basically, Laguna and the debtors... It's really an agreement in effect, or a relationship between the debtor and Laguna Derry. Is that correct? I'm sorry, can you repeat? Is it really affecting the relationship between the debtor and Laguna Derry? Yes, that's who the settlement agreement was between. And although Central States was a member of the unsecured creditors committee on that case, we were very clear the whole time that... And we had a carve-out in that settlement agreement that says, again, it doesn't remove our ability to go after jointly and severally liable entities. So you're saying I'm preserving my rights against... I got it. Against Laguna Derry, even though the court is extinguishing the indemnity to the debtor. Right. And to be clear, obviously, none of the appellees here were debtors in the bankruptcy. Okay. Here's my other question. The... You're saying that the basis for the revision here was not the financial condition of the employer. That's obviously not on the face of the settlement. There's no explanation for the decision, as would seem to be required under the statute, under at least the B-2, notice decision-making and explanation. And where does the authority come from to just making a revised assessment that is not tied to a particular methodology in the statute and to stray from those methodologies, if you're not going to spell them out in the revised assessment? Does the plan itself need to have rules that authorize you to do that? I do not think it's necessary for the plan to have rules on it. I think it's a fiduciary duty issue. If the trustees are willing to approve the assessment based on the litigation risk, the revised assessment, then they may do so, which is what they did here. And also to touch on your point on 1401B-2, that's obviously the crux of Apelli's argument, is 1401B-2 says you can revise in response to a request for review. But it doesn't even say that. What it says is that if a fund revises in response to a request for review, it has to give the basis for it. And I think that kind of gets to how to interpret the silence in the statute on a fund's right to revise. If you read that provision, 1401B-2, it's assuming the fund has the right to revise. It's not saying the fund can revise in response to a request for review and that's it. It doesn't say anything close to that. It says the fund, if it revises in response to a request for review, must provide an explanation of why it did that. But you've just explained to us that that in fact is what you did here, that the revision was in response to the request and to its particular objections that they had and that was the basis for the settlement. But we don't have what the statute would seem to require. To be clear, this revision was not in response to a request for review. The process works, the employer requests review. If they're not satisfied with the response or non-response to the request for review, they then initiate arbitration. Here the employer requested review, the fund did not respond, and then they initiated arbitration. Only after that did the parties discuss a revised assessment. So this is not part of the request for review process, like in DISA it came after and like in USX it came after. You haven't had any, you haven't communicated with PBGC or anything about this case, have you? I have not. Okay. Okay, we'll hear from you on rebuttal. Great, thank you. Thank you. And Mr. Finn, I'd like to give you some additional time, too. Let's add 10 minutes to Mr. Finn's time. Thank you. Thank you, and may it please the Court, Andrew Finn on behalf of the appellees. I'll start perhaps where Judge Ambrose's questions led at, because I think that's really important in what this case is all about. It's about a contract that central states and the plans trustee decided to enter into with a withdrawing employer, ordinary, not a party to this case, in 2016 to settle an arbitration. There was a dispute. They went to arbitration. They decided to enter into a settlement. None of the appellees here are parties to that agreement. In the district court, and I don't think in the brief by the appellant, the appellants have never claimed that any of the appellees here, the defendants, are bound by that agreement. The settlement agreement provides an agreed-to sum of money that the board and entities that were party to that agreement would pay. It's not tied to any specific statutory framework. And in fact, when you look at the settlement agreement, today the appellants are saying that the settlement agreement just reset the statutory framework that were in the 1399B1 notice world. But when you look at the agreement, there's only one withdrawal liability that's specifically referencing the agreement as being notice pursuant to 1399B1. Your argument is that you're the commonly controlled entities that did not sign the 2016 settlement agreement are not bound? That's right, Your Honor. So then if they aren't bound, then you sleep on your rights that we're initiating a new arbitration in response to the revised assessment? No, Your Honor, because how we viewed this settlement agreement was that central states was taking this liability, entering into a private settlement, saying any disputes, in fact, the settlement agreement says this, any disputes related to that agreement shall be resolved in the state or federal courts in Cook County, Illinois. So what our reading was of it was that this was just central states deciding as they could. They entered into arbitration. They decided we are going to take this out of the statutory scheme, put it in a settlement agreement, and their remedies, therefore, are those of contract thereafter. Because the problem comes for us. At some point, somebody is saying that you as commonly controlled entities with Borden, Ohio, having gone into bankruptcy, ceased to pay, and they make a claim on you. You didn't say, wait a minute, I want to have this arbitrated because I don't think this settlement agreement applies to us. Your Honor, the bankruptcy, there was no claim against our clients. I'm just saying, but somebody, the PBGC or somebody is going after you, right? Central states, the pension fund. The fund is going after you. I think that timing is quite telling in that what happened was the Borden entities, who are parties to the settlement agreement, unfortunately went into bankruptcy. In the bankruptcy, central states made a claim under the contract saying we're still owed money under this contract. The litigation that resulted was the fact of the matter that the entities here who are parties, the appellees in this case, had divested their interest in the Borden Dairy entities before the bankruptcy. When they did that, they entered into an agreement with the purchaser of Borden Dairy entities. They said we will fund $30 million in an account. This is referenced in some of the papers and also Laguna Dairy and the entities who are parties here agreed to indemnification related to this settlement agreement obligation. When the Borden Dairy entities entered bankruptcy, the question is who would get that $30 million that had been placed in an account expressly to satisfy the obligations under the settlement agreement. Our clients actually didn't enter into a litigation with the bank that was holding that money. That settlement resulted in the release of those $30 million that was in the account because of the indemnification obligations of our clients to the Borden entities for that obligation. Meanwhile, central states sat back. They filed a notice of no objection, sat back and waited. They recovered some amount in the bankruptcy. I believe it was $100,000 some and then in 2022 brought suit against our clients. What we have here is really central states failed to adequately protect itself. They took themselves out of the statute. They could have done multiple things, I think, to protect themselves. One is saying, in effect, by settling, you have an arbitration. If you settle, then there is no arbitration award. Therefore, you're sort of fitting between B1 and B2 in this sort of gap. And because technically you fit in this gap and B1 doesn't technically apply and B2 doesn't technically apply, therefore, you're scot-free. I think that is the result in this case, yes. But I will say that central states could have protected themselves in multiple ways. One, which we talked about in our papers and Judge Hughes noted, is pursuing the consent award to make sure that they're within the statutory framework. You can't pursue the statute when you have this rather unusual joint and several liability scheme where commonly controlled entities are liable. Making sure that you're following the statute, I think, is important. The second thing, though, that they could have done as a matter of private contract is they could have made sure that all the entities that they thought they might want to enforce this liability against were parties to that contract or were bound by it. My colleague on the other side, I think today was a little bit uncertain about the position on this, but it was very clear below in the district court and on the papers on appeal, they do not allege that we're bound by the agreement. So they want to have the agreements, they wanted the benefit of the agreement to say that this was a revised liability, but then they say, well, but we're not actually bound by the rest of the terms of the agreement, including where you're supposed to resolve all disputes, which is Illinois courts, which we're not in. This is on appeal from the District of Delaware. And they want to really rewrite the settlement agreement itself, which says actually in section, I think it's 1.4 of the settlement agreement, this is in Joint Appendix 279, that in the event of a default of the payment obligation, that central states could collect the original withdrawal liability, which really undermines this picture of this was a revised liability, reset the statute. Mr. Finn, you seem to be hanging your hat on this falling where it did after the commencement of arbitration and before final award. But why should it be any different than a settlement agreement before arbitration was ever invoked? If a plan puts out its assessment, there's an objection by the employer and the two start talking to each other and decide that they're going to enter into a settlement. The opinions of the PBGC seem to contemplate that, that there's authority to enter into a settlement. And that's under the auspices of the statute. So why should it take it outside of the statute if it happens to be settled after the initiation of arbitration rather than before? The context matters and the type of settlement agreement. So I think that if this were a situation of 1399B2, for example, where there was a request for review and that then the parties entered into some sort of an agreement and the agreement made very clear what they were doing. We are hereby revising under 1399B2. Therefore, everybody has noticed what's going on. This is a different scenario than what you had here. Do you have to invoke the statute by the number of the section for the parties to both understand that they're revising the original settlement? I'm sorry, the original assessment? I think that in certain circumstances, yes. I think that you would have to make that clear in the settlement agreement. And if the settlement agreement also made clear that we are still within the statutory framework, that we are not waiving all of our rights under the statute, which also is another aspect of this settlement agreement that the appellants point to, is that the parties agreed, in fact, in the waiver provision in that agreement that we don't want to follow the statutory scheme going forward, which is fine. The pension fund should have the right to enter into a contract. That's perfectly fine, but they have to realize that if they are deviating from what the statute provides, then their remedy is going to be in contract and not a statutory... Just to tag on to Judge Krause's question, the amendments, or the multi-employer amendments of 80, and the ERISA, they're construed liberally to protect the solvency of the multi-employer plans, right? Your position claiming that somehow you fit within a statutory gap creates a disincentive to settle, doesn't it? Why would a fund settle if it has no statutory cause of action to enforce a settlement agreement against commonly controlled entities if the party with whom they enter into the agreement ceases to exist or can't pay? No, I don't think it does disincentive by settlement, Your Honor. I think that when you have a statute like this that provides extraordinary remedies of joint and several liability, a federal cause of action, and you decide to enter into a private settlement, you need to make sure that you're not bringing yourself outside the statutory framework. You can protect yourself through contract, which people do all the time, adequately through contract and settling all sorts of federal claims, non-federal claims, and do it through contract, but you don't get to unwind portions of the contract once you, the result, you didn't expect the result you got, and unfortunately... Doesn't DISA Industries argue against that? That involved a voluntary withdrawal from arbitration, just like that's what you had here, a settlement agreement and a voluntary withdrawal from arbitration. I think that's partially correct, Your Honor. The difference in DISA was that we had a, there was a revision that was, that happened before the time period to challenge and go to arbitration expired, and in fact, DISA, I believe, if I recall correctly, came up to the district court and federal courts on a question of whether, once the pension fund had adjusted the, unilaterally adjusted the payment structure during the court, during that very initial time period of 90 days, I believe it was, whether the employer would have to pay the higher amount pending arbitration. So you were in the context of the statute. There is a number of cases that go to the fact that federal courts can somewhat police the arbitral process, which is also consistent with the Federal Arbitration Act, and that's really the point at which that came up. So I do think it's different. Yes. But wasn't the argument in DISA, in effect, that somehow the statute didn't apply? I'm not sure that there was actually an express argument that the statute didn't apply. They did not have a settlement agreement there like we do here. They were just within the statutory framework. The employer decided to voluntarily waive and dismiss the arbitration without any actual resolution. So I do think it's different. And DISA also involved a minor computational error. It wasn't just an outright, hey, we've actually got the right to this, we're just compromising on that, outside of the arbitration process, right? So DISA doesn't get them as far as they need to go. That's correct. And I think it's the same with the USX case. These were alleged computational errors that were dealt with by the pension fund very early in the process. So that's a very different situation. And I will say that both the Fourth Circuit and the Seventh Circuit, they decided to really imply that you could revise and that the pension fund could revise as long as there's no prejudice to the employer. And that worked, arguably, I'm not sure if they're right or wrong, but at least it's kind of grounded in the statutorily prescribed methodology for the plan sponsor or trustee, unlike this, which no one says this was the methodology they were supposed to be using all along. That's right. And I think that's critical. And so when you look at a settlement agreement that says, here's a number we're just going to agree to, here are the entities who are going to be bound, we're going to agree that Illinois law and federal law apply, and we're going to resolve our disputes in court, that is all reflective of the fact that they weren't trying to reset this statutory framework, which in DISA and USX was actually what I think either explicitly or implicitly, the Fourth and the Seventh Circuit were recognizing that there was no prejudice to the employer because they still had, they still could go to arbitration, they still could, in one case, I think it was deal with it in arbitration, and in fact, you know, go through the process that the statute provided. Your claim could have gone through arbitration and follow on litigation too, but opted to waive that as part of the settlement. How is this really different other than the basis for the assessment has concededly been, is different, it's not just a miscalculation, it was to resolve the differences between the parties and changes the amount over the schedule but not the ultimate amount if it needs to be accelerated because of a default. Your Honor, I think if our clients were the board and entities who were parties to the settlement agreement, yes, we would be bound, we would have to live with that scenario, and we would be in a contract dispute presumably in Illinois court. Is there any dispute that your clients are part of what would constitute the control group for purposes of the statute? With respect to, no, for purposes of the motion to dismiss, only with respect to Laguna Dairy, which is one of the parties which didn't exist at the time of the withdrawal and under the statute and case law, we believe that the proper way of looking at the common control is at the time of withdrawal in 2014. But with respect to the others, the other defendants here, we're not disputing on a motion to dismiss that they've alleged adequately that we were under common control at the time of the withdrawal. So if we combine then the statutory liability that goes to the other members of the control group and our notice to one's notice to all decision, then why aren't you liable under the settlement agreement just as much as Wardner initially was? Your Honor, because if the notice here was the 2016 settlement agreement, that doesn't provide notice to non-parties to that agreement, hey, everyone who are non-parties to this agreement who may be under common control as of 2014, you're still liable no matter what this contract says. Why is that any different than the initial notice of liability? How are you prejudiced in other words? Well, here we actually have, you know, with the passage of time, quite a bit of prejudice because we have a situation where our client divested from the actual what I'll call primary employers, the one who actually had the employees who were part of this pension plan who withdrew. Those were the Borden Dairy entities. Our clients divested of those entities before the bankruptcy of Borden Dairy, funded a $30 million account pursuant to that contract in order to make sure that this settlement agreement obligation was paid for and then due to the unfortunate circumstances of this bankruptcy, we are now left in a situation where our clients are holding the bag and really because central states is trying to turn back the clock on their settlement and say don't worry about that settlement, we're going back to the original or I guess the amended Well, it was amended downward, right? It was revised down. It was, yes. So, if you believe that you're not liable, go back to the first question. Why didn't you request review or initiate a new arbitration saying, wait a minute, it doesn't apply to us. We went on the merits. You didn't do that. Your Honor, because our view is that this wasn't a new revised notice and this happened in 2016. The statute provides that you can bring arbitration within a I'm saying the fund comes after you and you say, no, we don't know it. And you then, what should you, shouldn't you request review or initiate some type of arbitration saying,  I'm telling you, we don't know this. I think if there were a new revised, if there were an actual new liability noticed, perhaps, but the problem is we would have this, we would have this issue of, you know, what was the notice? When is the trigger point of the statute which provides pretty tight timelines to challenge and go to arbitration? So, we were talking about this case filed in 2022. Settlement agreement is 2016. The original withdrawal was 2014. I believe the original notice that's referenced in the withdrawal liability was 2015. So, what we relied on was the fact that the primary employers, Borden Dairy and the Borden Dairy entities, did trigger the dispute resolution provisions in the statute. There was an agreement and they resolved it through a private settlement agreement. Central States got back up. I'm talking about the end part. It's now years later. Borden goes into bankruptcy. They're not paying and the funds coming after you and you say we don't owe. Why didn't you do something to initiate an arbitration saying we don't owe it and we're going to prove it? Your Honor, I don't think we would fall within the statute. I don't think that we would be able to do that because the statute, we didn't view this as a notice back in 2022 when they brought this lawsuit as a notice that would allow us to actually be within the dispute resolution procedures of the statute. You didn't perceive it that way but at the point that they bring a collection action against you, they clearly do. And under those circumstances where your response is that this is not valid as a revision to the initial assessment, this is something private and outside of the statute, how can you come, how can you raise that before us in federal court as opposed to under Huber, under Flying Tiger Line going initially to arbitration to challenge their authority to revise this in this particular format? I mean,  we didn't do that in response to this lawsuit and I don't think that we would have had the right frankly to do it because under the view of the appellants and how they were framing this was this was a liability notice back in 2015. And so we were past the time of initiating arbitration and the statute provides for arbitration but only in the initial time period of, I think it's 90 days and then there's maybe a 180 day period after the notice. So, I mean, I suppose we could have interpreted the complaint as a  we could have interpreted some other document, something in the bankruptcy as a  but I think that goes back to the problem that we have here. The collection action as a notice. Yeah, the complaint. Yeah, the complaint but at that point I suppose we could have interpreted that as a notice but I think that would have been difficult under the statute as well. You were on notice they're seeking money from you. Right. And our view was that you don't have a right to do that under the statute and they invoked 1401B1 to do the collection action. Our view is they didn't have the right to do that. The problem that I'm having is that all these arguments appear to be hyper literal and you've got people out there that are not being paid in connection with their pensions and whatnot and at the outset you would if you were commonly controlled would be liable and you're saying somehow we there was an arbitration begun it wasn't finished it was  therefore we don't have any liability because what they should have done was either had an award entered at that time or they should have had us sign the settlement agreement they didn't do it too bad so sad. Your Honor we understand Central States obviously has obligations to its beneficiaries but what we're talking about here is liability as to entities who are actually never employers direct employers so the only reason we are potentially liable was by operation of this extraordinary provision in the statute that's why it's important that we follow the statute because in order for that to apply we think that it's important not only to the pension funds but to employers and not just the direct employers but those commonly controlled entities that everybody understands how this is going to work. Under B1 would there have been notice to every member of the control group? No. So generally what happens is there's an initial notice of withdrawal liability courts have said and interpreted the statute to read that notice to generally goes to the primary employer the employer who has the contractual relationship who had the employees who were part of the pension plan who were withdrawing those entities. The notice goes to the employer that is deemed if it's proper under 1399 B1 or B2 that's deemed to be notice to all. Those are the cases that Central States has cited and so that is the notice to all provision. So then explain to us how it is that the notice that's given to that same employer if we view the settlement as an effort to revise that assessment why that notice to the employer is not equally sufficient to notify the rest of the control group? So in terms of the question of whether the settlement agreement let's just say in a hypothetical world had revised the withdrawal liability. We're not claiming that notice to Borden Dairy at that time was not sufficient to notice the other controlling entities who might be liable. That actually that's not our argument. Our argument is rather that that's not what the settlement did so when notice when you're providing notice and the notice the settlement agreement doesn't say that this is a revised notice that that's that doesn't put the controlling shareholders or the controlling entities on notice. But that's what the agreement purports to do right? I mean it doesn't even set a new schedule it makes reference back to the original schedule and changes the amount that's to be paid pursuant to the original schedule and it's full of references to the various provisions of the statute. So if you accept that you receive notice then why isn't it on your client to take appropriate action given the risk that this would be interpreted as a revision to the assessment? All I can say Your Honor is that and I see my time is up if I can briefly respond our view is that the settlement agreement did not brought this outside the statute and it would have been sort of a strange situation if the controlling entities or the commonly controlled entities would have gone to arbitration about something we thought had been resolved by private contract with the direct employer. With that I see my time is up we ask that you affirm the district court. Thank you. Thank you. Just waiting for the clock to start but okay. So a lot was just discussed about the decent industries case which is obviously a very important case here. I'll note two things about that case. First appellees really try to distinguish that case but the employer there made the same exact argument that the employer here is making. So    they argued under 1401B2 in response to a request for review that's the only time a fund may revise an assessment. And that's the exact argument that appellees are making here. And I already read that quote from DISA about how the statute is complex and even in the best case or best circumstances the parties will have a genuine disagreement. But I think that quote is important here because I think it shows that the motivating factor for the Seventh Circuit was not that it was a ministerial revision a correction of a revision under the statutory formula. The reasoning is broader. The reasoning is that a fund should be allowed to revise assessment at any time without prejudice. And I think At any time at any time a statute this specific that can be revised at any time without prejudice. Yes. Five years later ten years later I think that then the question would turn to is the employer prejudiced? Because obviously the fund goes through a whole arbitration. We had this enormously complex statute that's supposed to define things and cut them off and have periods and people can rely and you're blowing a giant hole in these  That is the correct way to describe it. I believe what's happening here is the whole statute and specifically the mandatory arbitration procedure. And the Seventh Circuit was clear on this. You keep coming back to the Seventh Circuit. Why should we follow the Seventh Circuit and go beyond its narrow holding? Let me give you        error. So the holding is about a  error. Yes. To extend that case to reach this one. I agree that the facts are different. I don't agree that it would be some massive extension of what the Seventh Circuit said this, so we're just going to  I think it's clear from the statute itself. Going back to the fact that 1401B2 assumes the fund's right to revise. It doesn't say the fund may revise in response to an assessment. It assumes it can't  Which to me leads to a clear indication that Congressional intent was to give funds broad rights to  Mr. Garff, to clarify, you're not saying any time. You're not suggesting, and this panel certainly couldn't overturn allied painting, which by its nature sets some limits to when there could be a  Right? Right. And to be clear, the fund would still be bound by the restrictions of prejudice. They can't prejudice the employer and it can't be done in bad faith. And in terms of anything other than the correction to the calculation following the methodologies that are laid out in 1391, the language of 1391 seems to be mandatory. The amount of the unfunded vested benefits allocable to an employer that withdraws from plan shall be determined in accordance with the following subsections. And where employers have sought to have some other basis, such as the financial condition of the  it appears based on opinion 91-6 that the corporation views it as authorized to use a different basis like modification for a financially troubled employer's ability to pay if there have been amendments to the plan or rules put in place in connection with the plan to authorize that. Does that exist here? And we don't have the plan in the record to make that determination. Is that something that we would need the district court to look at in the first instance? The plan is not in the record. Let me start there. Were there any regulations that provided for a different computational method or adjustment based on financial  I'll come back to the fact that here we were not settling based on financial condition. We were having the revised withdrawal liability assessment, noticing that through the  agreement. There was no reg or anything promulgated ahead of time that you were applying or following here. Just the settlement agreement. To answer your question, no, I'm not aware of a regulation. But I would say that we're focused on the computation 1391. Are you saying this was a correction of a computational error? No, I'm not. I'm about to get to it. I don't think 1391 well, first of all, I feel like I just answered your question slightly incorrectly. I think it's 200,000 to 183, right? What? The amount, the revision. Yeah, I went down to 17,000. That's right. All this is based on alleged computation error. Let's start there. That's in the settlement agreement. It says in the recitals that the revised  Where are you referring to in the settlement agreement? It's in the recitals. Paragraph J says that they've  the amount of the monthly withdrawal liability. Yes. And where in here is there a representation that the revised amount is to correct a computational error? All I'm referring to,  is where it says in recital F, in the arbitration, the board and control group has challenged, among other things, the amount of its monthly withdrawal liability payment. And they were obviously challenging that, claiming that it was improperly  calculated. They wouldn't have any other basis to challenge it. So that's I don't want to go beyond the record, so I'll just leave it at that. But what I want to get to as a broader response to your question is I think focusing on 1391 is kind of bearing the lead. Here we had a revised assessment. 1381 B2 says if the employer wants sorry, 1399 B2 says if the employer wants to challenge an assessment, it's got to arbitrate. And here there was no arbitration. So they could come back in theory if they hadn't waived the right to arbitration in the  which by the way indicates that the parties viewed it as a statutory revision, not as a breach of contract, because why else would the fund require them to waive and why else would they accept that? But anyway, if the parties viewed sorry, if the employer wanted to challenge the assessment on the basis that it wasn't properly computed because it was reached as a result of negotiations, they could have done that if they wanted, but they didn't, so they've waived that. So I think that arbitration reigns supreme here. If they wanted to challenge anything about it, including the point you raised, they could have done that in arbitration, but they didn't do that. All right, thank you, Mr. Herring. We'll ask that the parties prepare a transcript and split the  We thank both counsel for excellent briefing and  We will take this case under advisement. Thank you,  Does Borden Ohio at all exist any longer? No, it doesn't. First of all, this isn't in the record, but as someone who was involved in the district court,  a big brand. It was sad to see him go. Honestly, we wish we would have gotten more in the bankruptcy, but it is what it is, and now we're just trying to collect from the remainder of the control. Part of my childhood goes by the